UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PROJECT REFLECT, INC. )
SMITHSON CRAIGHEAD MIDDLE )
SCHOOL, *et al.*, )
 )
     **Plaintiffs,** )
 )
  v. )   No. 3:13-cv-00341
 )   Judge Sharp
METROPOLITAN NASHVILLE BOARD )
OF PUBLIC EDUCATION, *et al.*, )
 )
     **Defendants.** )

## MEMORANDUM

Plaintiff Project Reflect, Inc. Smithson Craighead Middle School, a nonprofit charter school, and two parents of children enrolled in the school bring this putative class action lawsuit against the Metropolitan Nashville Board of Public Education (the "Board") and individual defendants Metro Nashville Public Schools ("MNPS") Director of Schools Jesse Register and MNPS Office of Innovation Executive Director Alan Coverstone. In it, they allege that the Defendants violated their rights under the Due Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution when the Board, relying on the recommendation of Register and Coverstone, voted on November 13, 2012, to revoke Smithson Craighead's charter, effectively shutting down the school at the end of the current academic year. Among other forms of relief requested, Plaintiffs ask the Court to issue a Preliminary Injunction preventing Defendants from closing Smithson Craighead and from interfering with its operations. (Docket Nos. 2 & 8).

In response, Defendants have filed Motions to Dismiss (Docket Nos. 12 & 14) for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and, with respect

to the individual Defendants, on the grounds that they are entitled to qualified immunity from suit. They have also asked the Court to stay discovery pending resolution of the qualified immunity issue (Docket No. 21) and have responded to the Motion for Preliminary Injunction (Docket No. 24). Plaintiffs have responded to the Motions to Dismiss (Docket No. 23), and Defendants have replied (Docket No. 29).

For the reasons explained herein, the Court will grant Defendants' Motions to Dismiss and deny as moot all other pending motions.

## **FACTS**[1]

Project Reflect, Inc., has started several educational initiatives with MNPS since 1994 designed to address the academic and developmental needs of low-income students. Project Reflect, Inc. Smithson Craighead Middle School has operated a public charter elementary school in Nashville since 2003, after the Board approved their 2002 application and renewed it in 2008. In 2008, Project Reflect, Inc., presented to MNPS and the Board an application to open and run a charter middle school targeting minority, underprivileged, and Title I students.

The Board granted this charter, and Smithson Craighead Middle School (SCMS) opened in an MNPS "abandoned school" in August 2009. The leaky, flooding, and deteriorating facility necessitated that SCMS move to Madison before its third year of operation, and due to student displacement associated with this move, standardized test scores were low. Despite the parties being signatories to a "collaboration compact" in which they pledged to support one another, Coverstone did not visit or provide support or notification of areas of concern for SCMS when he determined the school needed assistance.

---

[1] Unless otherwise indicated, this brief recitation of the factual background is drawn from the Complaint and documents referred to therein. *See infra* n. 4.

On November 13, 2012, the Board voted 8-1 to revoke SCMS' charter because it was underperforming academically. However, test scores were improving incrementally, the school was safe, and it had been taking steps since February 2012 to turn around the academic performance of the school. At the November 13 board meeting in which Coverstone and Register presented their recommendation to revoke the charter, Dr. Carolyn Baldwin Tucker addressed the Board during the public comment period and urged them not to revoke SCMS' charter. Parents and representatives of SCMS were not allowed to speak other than during the public comment period. SCMS was not notified of the decision to recommend closure of the school until November 9, 2012.

The school has deteriorated since the Board's November 13 action. Parents have withdrawn students and sent them to other schools; teachers have transferred; students could not concentrate on their standardized tests; when MNPS officials have visited the campus, they have created stress for students and faculty by their very presence as "closers of the school." As of April 1, 2013, enrollment dropped 20%, forcing the school to adopt undesirable schedule, curriculum, and operational changes. Its programming has suffered, and it has experienced economic harm.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure require a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the Court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Court must assume that all of

the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "[i]n addition to the allegations in the complaint, [the Court] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011) (citation omitted). In contrast, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "In the context of Section 1983 municipal liability, courts have interpreted *Iqbal*'s standards strictly." *Hutchison v. Metro. Gov't*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2009); *Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 966 (E.D. Tenn. 2010) (explaining that *Twombly* applies to state-law claims in federal cases).

## ANALYSIS

Plaintiffs' Complaint under 42 U.S.C. § 1983 alleges that Defendants deprived Plaintiff Project Reflect, Inc. Smithson Craighead Middle School of a legally protected interest in running a charter school, without due process of law in violation of the Fourteenth Amendment; that

Defendants deprived the individual and class Plaintiffs of a legally protected interest, created by Tennessee law, in educating their children at SCMS, without due process of law in violation of the Fourteenth Amendment; and that Defendants denied Plaintiffs' rights to equal protection of the laws in violation of the Fourteenth Amendment by singling out SCMS for charter revocation and closure without a rational basis, acting arbitrarily and capriciously, and with discriminatory intent.

Defendants have moved to dismiss this action in its entirety. The Court analyzes each claim in turn.

## I. Count I: Due Process Violations

"The Fourteenth Amendment's due process clause includes a guarantee of procedural fairness, assuring that a deprivation of life, liberty, or property must 'be preceded by notice and opportunity for a hearing appropriate to the nature of the case.'" *Blazy v. Jefferson Cnty. Regional Planning Com'n*, 438 F.App'x 408, 411 (6th Cir. 2011) (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)).

### A. Plaintiff Project Reflect, Inc. Smithson Craighead's Standing to Sue

Defendants argue that the relationship between SCMS and MNPS is analogous to the relationship between a municipality and the state that created it. As a political subdivision of the state of Tennessee, they argue, the organizational Plaintiff lacks standing to sue the state under the Fourteenth Amendment. Plaintiffs respond that Project Reflect, Inc., is a nonprofit corporation and private citizen of the state of Tennessee that acquired a property interest by virtue of its contractual relationship with MNPS.

As an initial matter, it must be determined exactly which organization is the Plaintiff in this case. The Complaint identifies as a party "PROJECT REFLECT, INC. SMITHSON

CRAIGHEAD MIDDLE SCHOOL (hereinafter referred to as 'SC-MS') . . . a publicly funded Charter School organized and existing under the Tennessee Charter Schools Act, Tenn. Code Ann. § 49-13-101, *et seq*." (Docket No. 1 ¶ 6). It then states that "PROJECT REFLECT, INC. is a Nonprofit Corporation organized and existing under the laws of the State of Tennessee, and PROJECT REFLECT, INC. is the 'Sponsor' of the Charter School SC-MS pursuant to the Tennessee Charter Schools Act." *Id.* In subsequent briefing, Plaintiffs seem to distinguish between cases in which "the Charter School itself was the plaintiff" and the instant case, in which Project Reflect, Inc., seeks to defend its protected property interest. (Docket No. 23 at 6).

It is a distinction that may make a difference. "It is well established that political subdivisions cannot sue the state of which they are part under the United States Constitution." *Greater Heights Acad. v. Zelman*, 522 F.3d 678, 680 (6th Cir. 2008) (citing *City of Trenton v. New Jersey*, 262 U.S. 182, 186-87 (1923)). In *Greater Heights*, the Sixth Circuit, considering Ohio's "community schools," which are functionally similar to Tennessee charter schools, held that "community schools are political subdivisions of the state" and thus "barred from invoking the protections of the Fourteenth Amendment." 522 F.3d at 680-81. Defendants also cite a thoroughly reasoned district court opinion from Pennsylvania, a state with a charter school law that is similar, but not identical, to Tennessee's law in relevant respects, dismissing a charter school's § 1983 claims against a school district because the school was "sufficiently analogous to a municipal corporation" to preclude it from filing suit against its creator. *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 3:CV-10-1171, 2012 WL 5463132, at *16 (M.D. Pa. Nov. 8, 2012).

However, these cases are of limited value in determining whether a public charter school created by Tennessee law is a political subdivision of the state. The Court's analysis in *Greater*

*Heights* was based on Ohio's "statutory and case law, as well as the substantive control that Ohio exerts on its community schools," *id.* at 680, and Ohio statutory law is quite different from Tennessee law on this question. Among other salient differences, an Ohio statute defines "political subdivision" to include a "community school established under Chapter 3314." *Id.* (quoting Ohio Rev. Code § 2744.01(F)) (emphasis removed). Tennessee law does not. Pennsylvania law, meanwhile, specifies that a charter school may "sue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued." 24 Pa. Stat. Ann. § 17-1714-A (West). Tennessee law, in contrast, provides that "The governing body of a public charter school may sue and be sued," without qualification, and prohibits the governing body of a charter school from levying taxes or issuing bonds "except in accordance with state law." Tenn. Code Ann. § 49-13-124(a). This suggests a formal distinction in the law between political subdivisions and charter schools, in which "control of instruction" is "vested in the governing body of the school under the *general supervision* of the chartering authority" and in compliance with a signed charter agreement and state law. *Id.* § 111(a)(1) (emphasis added); *see also id.* § 49-13-102 (noting the legislative intent to allow the establishment of public charter schools that "operate within a school district structure but are allowed maximum flexibility to achieve their goals").

On the other hand, Tennessee exerts a great deal of substantive control over its charter schools. Public charter schools are "part of the state program of public education." *Id.* § 105. They are subject to formation, reporting, licensure, and insurance requirements, periodic audits, educational performance standards and requirements, liability limits, open meetings laws, and public records laws, all either identical or analogous to the laws that govern political subdivisions and municipalities. *See*, *e.g.*, *id.* §§ 49-13-106, 111, 116, 119, 120, 125, 127, 138,

140. This suggests that public charter schools in Tennessee may be properly regarded as political subdivisions that lack standing to sue the state.

However, the Court need not resolve this issue at present. Instead, it accepts Plaintiffs' argument that Project Reflect, Inc., the "sponsor" of SCMS, is the intended organizational Plaintiff in this case. Tennessee law defines a charter school's "sponsor" as "any individual, group, or other organization filing an application in support of the establishment of a public charter school" and subject to certain restrictions including, *inter alia*, nonsectarian and nonprofit status. *Id.* § 49-13-104(10). The sponsor—as distinguished from the "governing body of the public charter school"—plays a key role in applying for a charter, appealing its disapproval, and, if approved, signing the written agreement, "which shall be binding upon the governing body of the public charter school." *Id.* §§ 49-13-107, 108, & 110. Defendants do not contend that Project Reflect, Inc., a nonprofit corporation that has run educational programming for approximately nine years before opening a charter school, lacks standing to sue. (*See* Docket Nos. 1 at 8 & 29 at 2). Thus, in an effort to construe the Complaint "so as to do justice," Fed. R. Civ. P. 8(e), and mindful of the time-sensitive nature of the issues presented, the number of individuals potentially affected, and considerations of judicial economy, the Court will discuss the Complaint and Motion to Dismiss under the assumption that Project Reflect, Inc., is the organizational Plaintiff.[2]

   **B.   Adequacy of State Remedies**

Defendants argue that Plaintiffs have failed to plead the inadequacy of state law remedies, which Defendants contend is an essential element of any due process claim. Alternatively, they argue that inadequacy of state remedies must be pled for claims alleging a

---

[2] Of course, the discussion that follows would apply with equal force to a claim by the charter school itself.

due process violating arising from a random, unauthorized act, and that Plaintiffs have presented such a claim. Plaintiffs do not address this argument in their response.

In the Sixth Circuit, "a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (citation omitted); *see also Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) ("Where the state action complained of consists of, *e.g.,* unpredictable and tortious or otherwise random and unauthorized acts of state employees, the Constitution does not require the state to do the impossible and predict when the loss will occur.").

"Not all due process challenges can be so conveniently categorized" as either attacking an established state procedure or a random, unauthorized act, however. *Id.* at 1365. Nor has the relevant case law always been clear. *See Mitchell v. Fankhauser*, 375 F.3d 477, 481-84 (6th Cir. 2004) (chronicling the inconsistent development of circuit precedent, and holding that the inadequacy of state remedies must only be pled when a plaintiff challenges a deprivation arising from a random, unauthorized act). Still, because § 1983 "was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials," *Vicory v. Walton*, 721 F.2d 1062, 1065 (6th Cir. 1983), a plaintiff proceeding under the random, unauthorized act theory "must prove as an element of the claim that state procedural remedies are inadequate." *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 447 (6th Cir. 2008) (in the context of a motion for summary judgment).

9

On its face, the Complaint seems to challenge an official process—the revocation of a school charter—that is largely controlled by state law, namely the Tennessee Charter Schools Act, Tenn. Code Ann. § 49-13-101 *et seq*. Based upon "the nature of the deprivation complained of and the circumstances under which the deprivation occurred," then, it would appear that the gravamen of the Complaint is that "a state process dictated by statute . . . itself deprived [Plaintiffs] of due process," and thus there would be no requirement that Plaintiffs allege the inadequacy of state remedies. *See Mertik*, 983 F.2d at 1365-67 (explaining analysis that should be used to categorize complaints, particularly when they challenge statutory schemes that give officials "broad power and little guidance") (citing *Zinermon v. Burch*, 494 U.S. 113 (1990)).

But the Complaint and subsequent briefing (or the lack thereof) resist this analysis, inexplicably. First, Plaintiffs allege in the Complaint that they "have no adequate remedy in state law." (Docket No. 1 ¶ 52). Second, Plaintiffs' assertions in response to the Motion to Dismiss render the Court's attempted interpretation untenable. Plaintiffs argue that Defendant Coverstone and the Office of Innovation "have no authority" under state law. (Docket No. 23 at 10). They characterize state law as providing "absolutely no procedural or substantive guidance for revocation other than the [sic] LEA [local education authority] 'may' revoke a Charter." *Id*. That the Board acted on Defendants Coverstone and Register's recommendation to revoke the charter, they say,

> is an ultra vires act beyond the scope of the Act, which resulted in the deprivation of the Plaintiffs' protected property interest. The [Board] and the individual Defendants acted without statutory authority in recommending the revocation of the SCMS Charter as the "Office of Innovation" has no Statutory basis.
> Most importantly, because the "Director" of the "Office of Innovation" has no statutory authority, the [Board's] reliance on his statements is particularly misguided and unfair . . . . Since the Office of Innovation is a fictional entity and the Director thereof has no more power than a common citizen, . . . the action by the [Board] cannot be validated.

10

*Id.* at 10-11. Finally, Plaintiffs remain silent in response to Defendants' argument that they failed to plead the inadequacy of state remedies, specifically why they could not obtain redress through a writ of certiorari action brought pursuant to Tenn. Code Ann. § 27-8-101 *et seq*.

Plaintiffs are "master[s] of the complaint," *Holmes Group, Inc. v. Vornado Air Circ. Sys., Inc.*, 535 U.S. 826, 831 (2002) (citation omitted), and they have eliminated any ambiguity about the due process theory under which they proceed. The school board Defendant acted randomly and without authority when it voted to approve a recommendation made by the head of a fictional entity, a man harboring a "desire to close SCMS for his own personal reasons." (Docket No. 23 at 7). This is akin to the state official who "was not acting pursuant to any established state procedure, but, instead, was apparently pursuing a random, unauthorized personal vendetta . . . ." *Zinermon*, 494 U.S. at 130 (discussing *Hudson v. Palmer*, 468 U.S. 517 (1984)). "The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Hudson*, 468 U.S. at 534.

Because Plaintiffs allege that Defendants acted *ultra vires* and do not respond to Defendants' argument that they failed to allege inadequate postdeprivation state remedies, the Court is compelled to conclude that Defendants' unauthorized reliance on a malicious individual, who himself acted outside the bounds of state law, could not have been anticipated. Accordingly, the state could not have provided adequate predeprivation process. Plaintiffs are thus required to plead that state procedural remedies are inadequate. *See Magnum Towing*, 287 F. App'x at 447.

Plaintiffs' conclusory allegation that they lack an adequate postdeprivation remedy in state law is factually insufficient to raise a reasonable expectation that such is the case, *see Twombly*, 550 U.S. at 555, and they fail to attack the state's judicial process for the correction of

11
Case 3:13-cv-00341   Document 30   Filed 05/22/13   Page 11 of 19 PageID #: 407

board and agency errors, *see Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995).[3] For this reason, the procedural due process claim should be dismissed as to all Defendants. Nonetheless, the Court will analyze the remainder of Defendants' motion.

    C.    **Merits of the Due Process Claim**

        i.    **Property Interest of Project Reflect, Inc.**

Defendants argue that Project Reflect., Inc., has no property interest, protected by due process, to operate a charter school, much less an underperforming one, and that neither Tennessee law nor the charter agreement between MNPS and Project Reflect, Inc., provides that any particular process is due before the state may revoke a failing school's charter. Plaintiffs respond that Project Reflect, Inc., acquired a property interest by virtue of its contractual relationship with MNPS, manifested in the form of the charter agreement, which was signed according to state law.

When evaluating a claim for the violation of due process rights, "[t]his court undertakes a two-step analysis." *Blazy*, 438 F. App'x at 411 (quoting *Mitchell*, 375 F.3d at 480). First, a Plaintiff must establish as a threshold matter that it had a protected property interest in a benefit. *Id*. at 411-12. Second, the Court must determine what process is due. *Id.* at 412.

Property interests are not created by the Constitution. *Bd. of Regents of St. Colleges v. Roth,* 408 U.S. 564, 577 (1972). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules . . . ." *Id.* "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Blazy*, 438 F. App'x at 412 (citation omitted). "Property interests protected by the due process clause must be more than abstract desires or attractions to a

---

[3] A common-law writ of certiorari would seem to be an adequate state remedy for the unconstitutional deprivation alleged here. *See Heyne v. Metropolitan Nashville Bd. of Pub. Ed.*, 380 S.W.3d 715, 729-30 (Tenn. 2012).

benefit. The due process clause only protects those interests to which one has a legitimate claim of entitlement." *Waeschle v. Dragovic*, 576 F.3d 539, 544-45 (6th Cir. 2009) (citation omitted). The existence of a property interest is a matter of state law; "whether that interest rises to the level of a legitimate claim of entitlement protected by the due process clause is determined by federal law." *Brotherton v. Cleveland*, 923 F.2d 477, 481-82 (6th Cir. 1991).

In the case at hand, the statutory language and the charter agreement[4] do not support Plaintiff's claim of a property interest protected by state law. "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012) (citation omitted). The charter agreement incorporates Tenn. Code Ann. § 49-13-122(a), which provides that "A public charter school agreement may be revoked or denied renewal by the final chartering authority if the chartering authority determines that the school . . . (2) Received identification as a priority school, as defined by the state's accountability system." "The word 'may' customarily connotes discretion." *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 346 (2005). Interpreting similar statutory language while rejecting a charter school's procedural due process challenge, one federal district court wrote that the law

---

[4] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (internal citations omitted). Additionally, "a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citing *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005) ("[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute.")); *accord Ashland, Inc.*, 648 F.3d at 467 ("In addition to the allegations in the complaint, [the Court] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.").

"frames the decision to revoke a charter as a discretionary matter" and "affords the sponsor[5] of a charter school significant—indeed, almost total—discretion." *Project School v. City of Indianapolis*, No. 1:12–cv–01028–SEB–DKL, 2012 WL 3114573, at *3 (S.D. Ind. July 31, 2012) (noting that the "use of the word 'may' is significant; this word is precatory and customarily connotes discretion") (internal quotation marks and citation omitted). Tennessee's law similarly uses the language of discretion, not entitlement, and only minimally conditions that exercise of discretion.

Underscoring this broad grant of discretion, the Tennessee charter school statute repeatedly declares its purpose and intention to provide the state department of education and local school systems with "options," "alternative means," and "flexibility"—hardly the language of a statute creating a property interest. Tenn. Code Ann. § 49-13-102(a)(2), (b), (c), (d), & (e). The law constrains this discretion only by requiring the chartering authority to state its reason(s) for revoking the charter. *Id.* § 49-13-122(b). If, as in this case, the revocation occurs because of the school's priority status, no appeal is permitted—again emphasizing state discretion, not the charter holder's property rights. *Id.* § 49-13-122(c).

Even if it could be said that state law and the charter agreement create a property interest, for the aforementioned reasons, the Court finds that this interest does not rise to the level of a legitimate claim of entitlement protected by the Due Process Clause. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-57 (2005).

### ii. Property Interest of Parent and Putative Class Plaintiffs

Defendants assert that the parent Plaintiffs do not have a protected property interest in sending their children to the individual charter school of their choosing, *i.e.* SCMS.

---

[5] The term "sponsor" in the Indiana statute is roughly equivalent to the term "chartering authority" in Tennessee law.

Furthermore, they argue, the parent Plaintiffs cannot show that the education their students will receive at new schools to which they are assigned next year is significantly different from, or inferior to, the education received at SCMS. Plaintiffs respond that the Tennessee Charter Schools Act gives them a legally protected interest in enrolling their children in the charter school of their choice, and that the parent Plaintiffs have established an entitlement, protected by the Due Process Clause, not to be transferred to an inferior school.

"Public education is not a 'right' granted to individuals by the Constitution." *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)). "However, if a state elects to furnish free compulsory public education to *any* of its citizens . . . it must do so in a manner, respecting *all* of its residents, which comports with basic Fourteenth Amendment equal protection and due process strictures." *Wayne v. Shadowen*, 15 F. App'x 271, 283 (6th Cir. 2001) (emphasis in original). In Tennessee, school-age children have a constitutional and statutory right to a public education. *Heyne v. Metropolitan Nashville Bd. of Public Educ.*, 380 S.W.3d 715, 731-32 (Tenn. 2012). However, in the context of student discipline, the Sixth Circuit has suggested that a public school student "may not have procedural due process rights to notice and an opportunity to be heard when the sanction is attendance at an alternative school absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school." *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1359 (6th Cir. 1996) (citations omitted); *accord Wayne*, 15 F. App'x at 290; *see also Mullen v. Thompson*, 31 F. App'x 77, 80 (3rd Cir. 2002) (holding that students "have no constitutionally cognizable property or liberty interest in attending the individual school of their choice").

15

Plaintiffs argue that the Tennessee legislature created a substantive right to attend a charter school when it passed the Tennessee Charter Schools Act, and that this right represents a property interest protected by due process. (Docket No. 23 at 5). However, the Court disagrees and finds no support in statutory or case law for this proposition, nor do Plaintiffs cite any such authority. As explained *supra*, the Tennessee Charter Schools Act represents a broad grant of discretion to LEAs to revoke a school's charter. While SCMS can at least point to a signed charter agreement to support its claim to proprietary status, the Parent Plaintiffs present even less to justify their claim to "any significant property interests . . . including statutory entitlements." *Arnett v. Myers*, 281 F.3d 552, 565 (6th Cir. 2002) (citation omitted).

As to the parent Plaintiffs' assertion that, if SCMS is closed, they will have no choice but to transfer their children to an inferior MNPS zoned school, enroll them in private school, or homeschool them (Docket No. 1 ¶¶ 14-15), that allegation is belied by other allegations in the complaint (*see id.* ¶ 43), statements made at the November 13, 2012, meeting in question, and public records.[6] Defendants specifically discussed the need to give parents sufficient notice of the school's closing so that they could participate in the choice school and charter school application process, which was taking place in November 2012. (Docket No. 14-4). Plaintiffs' allegation that they will have no choice but to send their children to an inferior zoned school, home school, or private school falls short of the plausibility threshold and is contradicted by the pleadings.[7]

---

[6] *See supra* n. 4.

[7] It is also doubtful that Plaintiffs can show that the zoned schools are "inferior" to SCMS. They concede that SCMS is a "priority school" (academic progress within the bottom 5% of schools in the state) under the state's academic accountability regime and that they "cannot refute the standardized test scores" (Docket No. 23 at 6). In light of these statistics, the Complaint's vague allegations about safety, overcrowding, learning, and nurture at unspecified MNPS zoned schools (Docket No. 1 at 5-6) cannot establish a claim of significant educational inferiority.

### iii. What Process Is Due

"The right to procedural due process requires that when a State seeks to terminate a protected interest it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir.2011) (internal citations omitted). Because the Court finds that no Plaintiff has a property interest protected by due process in the continued existence of SCMS, no process is due. However, the Complaint and the materials cited therein make it clear that Plaintiffs had notice of the revocation recommendation (Docket No. 14-3), and that their representative, Dr. Carolyn Baldwin Tucker, addressed the Board at the November 13, 2012, meeting (Docket No. 14-4). Even assuming *arguendo* that a Plaintiff could establish a protected property interest, the Court finds that they received appropriate procedural protections under the circumstances. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (discussing three-factor analysis to determine what process is due); (Docket No. 14-1 at 17 (signed agreement stating that the chartering authority may revoke agreement "according to the procedures set forth in TCA § 49-13-121 and TCA § 49-13-122")).

Accordingly, Plaintiffs' due process claims will be dismissed.

## II. Equal Protection Claim

"'The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'" *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (citation omitted) *cert. denied*, 133 S. Ct. 878 & 133 S. Ct. 904. Because "the Equal Protection Clause is concerned with arbitrary government classification," a plaintiff can state a class-of-one discrimination claim by alleging that she has

17
Case 3:13-cv-00341   Document 30   Filed 05/22/13   Page 17 of 19 PageID #: 413

"been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601-02, (2008) (citation omitted).

Defendants allege that Plaintiffs have failed to identify a similarly situated comparator for their class-of-one equal protection claim. Plaintiffs respond that their equal protection claim "is unique in that SCMS is the only charter school in the bottom 5%." (Docket No. 23 at 7). However, they assert in their response that MNPS treats charter schools differently than traditional public schools in priority status because traditional schools "are apparently exempt from closure or revocation." *Id.*

Plaintiffs "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel*, 692 F.3d at 462 (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005)). Plaintiffs

> must show that they were treated differently than those similarly situated in all material respects. In addition, they must show that the adverse treatment they experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational. This showing is made either by negativing every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will.

*Id.* (internal citation omitted).

In the instant case, Plaintiffs have not alleged the existence of another charter school that is similarly situated in all material respects, or other charter school parents who are likewise situated. Indeed, they concede that SCMS "is the only charter school in the bottom 5%." (Docket No. 23 at 7). Despite Plaintiffs' subsequent suggestion that SCMS be compared to traditional public schools in priority status, traditional public schools are not relevant comparators because Plaintiffs have not alleged that they have "relevant similarity," *see Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (citation omitted), namely,

that Defendants are authorized to close them for being identified as a priority school by the state. Nor do they assert that the legislative distinction between charter schools and traditional public schools lacks a "rational relation to some legitimate end." *Romer v. Evans*, 517, U.S. 620, 631 (1996). While Plaintiffs do allege that Defendants' "'Class of One' discrimination had no rational basis" and was implemented "arbitrarily and capriciously with a singular discriminatory intent," they fail to plead the existence of a similarly situated comparator. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000).

As such, the Complaint does not contain sufficient factual matter to state a plausible claim for relief under the Equal Protection Clause. *See Iqbal*, 556 U.S. at 678-79. Accordingly, Count II will be dismissed as to all Defendants.

### III. Other Pending Motions

Because the Court will grant Defendants' Motions to Dismiss, all other pending motions will be denied as moot.

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (Docket Nos. 12 & 14) will be GRANTED. All other pending motions will be DENIED AS MOOT. This action will be dismissed.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE